FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 27 PM 4: 17

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHERYL W. HERNANDEZ                    CIVIL ACTION

versus                                 NUMBER 00-0260

WAL-MART STORES, INC.                  SECTION F MAG. 2

### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, Cheryl W. Hernandez ("Hernandez") opposes the Motion for Summary Judgment filed by Wal-Mart Stores, Inc. ("Wal-Mart").

### Background

Hernandez brought this action for discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e et seq. ("Title VII").

### Facts

Hernandez is a white female citizen of the United States, a resident of the State of Louisiana who was employed by Wal-Mart as a cashier from July 31, 1989 until she was terminated on February 26, 1999. Hernandez was fired for poor customer service when a black customer complained that Hernandez told him

1



that a boiling pot was so big that "you could take this to Africa
and boil animals in it."  Hernandez was only joking with the
customer and did not intend to be rude or disrespectful.

### Discrimination

"The analysis for Title VII discrimination claims is well-
known.  The plaintiff must establish a prima facie case that the
defendant made an employment decision that was motivated by a
protected factor.  Once established, the defendant bears the
burden of producing evidence that its employment decision was
based on a legitimate nondiscriminatory reason.  The burden then
shifts back to the plaintiff to prove that the defendant's
proffered reasons were a pretext for discrimination."  Mayberry
v. Vought Aircraft Co., 55 F.3d 1086 (5th Cir. 1995), citations
omitted.

"In work-rule violation cases, a Title VII plaintiff may
establish a prima facie case by showing `either that he did not
violate the rule or that, if he did, white employees who engaged
in similar acts were not punished similarly.'"  Mayberry v.
Vought Aircraft Co., 55 F.3d 1086 (5th Cir. 1995), citing Green
v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir.).

In this case, Hernandez who is white alleges that black
employees who engaged in similar acts were not punished
similarly.  Hernandez was terminated for poor customer service

2

when a black customer complained that Hernandez told him that a boiling pot was so big that "you could take this to Africa and boil animals in it." Hernandez was only joking with the customer and did not intend to be rude or disrespectful. See Separation Notice Alleging Disqualification attached hereto as Exhibit "A".

Several black employees were not fired when they had engaged in poor customer service, to-wit:

1.    Both customers and other employees complained about Keesha Johnson, a black Associate for poor customer service and Ms. Johnson was not disciplined. See Affidavit of Don A. Serpas attached hereto as Exhibit "B".

2.    Don Serpas wanted to write-up Sylvia Lewis, a black Associate, for being rude and discourteous but someone else in management told Mr. Serpas not to write Ms. Lewis up. See Affidavit of Don A. Serpas attached hereto as Exhibit "B".

3.    Sylvia Lewis, a black Department Manager yelled at a white associate, Brenda Schiro, and told her "I'll fix you, you think you playing with me." Sylvia Lewis was screaming and yelling at Brenda Schiro on the salesfloor. A customer, Diana Beenemy and another associate, April Netherland, overheard Sylvia Lewis

3

screaming and yelling Brenda Schiro and they reported the incident to Rodney Brown, the store manager. Sylvia Lewis also poked at Brenda Schiro and screamed at her in front of Rodney Brown. Rodney Brown did not discipline Sylvia Lewis. See Affidavit of Brenda Schiro attached hereto as Exhibit "C".

4.    Sandra Spillman, a black associate was rude to a white associate, Rosa Moolenkamp, calling Rosa names; Sandra Spillman made Rosa Moolenkamp cry. See Affidavit of Brenda Schiro attached hereto as Exhibit "C".

5.    Sandra Spillman threw trash in a box that Brenda Schiro was filling with damaged shoes. Brenda Schiro asked Sandra Spillman to stop throwing trash into the box but Sandra kept throwing trash into the box. Brenda Schiro complained to Rodney Brown but instead of telling Sandra Spillman not to throw trash into the box, Rodney Brown removed the trash from the box himself.

6.    When Brenda Schiro would put the defective shoes on the pallet, Sandra Spillman would throw the shoes off of the pallet. Brenda Schiro complained to Rodney Brown about Sandra Spillman throwing the shoes off of the pallet. Rodney Brown said that he would put the shoes back on the pallet. Brenda Schiro complained to Trymel

4

Jones about Sandra Spillman throwing the damaged shoes
off of the pallet and Trymel Jones said that he would
give Brenda Schiro another pallet to put the shoes on
but that he would not tell Sandra Spillman anything
because Rodney Brown told him that Brenda Schiro was
having problems with Sandra Spillman and that Trymel
Jones was not to get involved.  Sandra Spillman was not
disciplined for throwing the shoes off of the pallet.
See Affidavit of Brenda Schiro attached hereto as
Exhibit "C".

7.    Lonnie Banks, a black assistant manager, was rude to
Rosa Moolenkamp; Lonnie Banks saw Rosa crying and told
Rosa that "crying is not going to get you anywhere."
Brenda Schiro told Veronica, another assistant manager
that Lonnie had been rude to Rosa but Lonnie was never
disciplined.  See Affidavit of Brenda Schiro attached
hereto as Exhibit "C".

8.    While Brenda Schiro was Department Manager she would
leave notes for the evening employees with instructions
to do certain tasks.  Tamara Johnson would initial the
notes indicating that she had done the work when she
had not done the work.  See Affidavit of Brenda Schiro
attached hereto as Exhibit "C".

9.  On one occasion Brenda Schiro told another employee to tell Tamara Johnson that Brenda wanted Tamara Johnson scan a rack of shoes.  Brenda Schiro overheard the other employee tell Tamara Johnson that Brenda wanted Tamara to scan the rack of shoes.  Tamara Johnson replied: "You can tell Brenda she can kiss my ass." Brenda Schiro wanted to write Tamara Johnson up for not doing her work and for cursing on the salesfloor but instead Rodney Brown, the black store manager, just moved Tamara Johnson out of the shoe department.  See Affidavit of Brenda Schiro attached hereto as Exhibit "C".

10. Tasha Johnson, a black associate, screamed at Brenda Schiro and threatened her, pointing her finger in Brenda's face.  Brenda Schiro told Tasha Johnson to stop pointing her finger in Brenda's face.  Tasha Johnson told Brenda "you are lucking that is all I got in your face."  Brenda Schiro complained to Rodney Brown but Rodney Brown did not discipline Tasha Johnson.  See Affidavit of Brenda Schiro attached hereto as Exhibit "C".

11. Barbara Flowers, a black associate upset a white customer.  The customer and her husband complained

6

about Barbara Flowers.  Barbara Flowers was sent home but she was not written up or terminated.  After the incident Evelyn Solis was told not to put Barbara Flowers on the registers.  Evelyn Solis asked Rodney Brown why Barbara Flowers could not run the registers; Rodney Brown told Evelyn Solis that there was an incident with a customer and that Barbara Flowers was not to be put on the registers.  See Affidavit of Evelyn Solis attached hereto as Exhibit "D".

12.  There have been several complaints about black cashiers.  A white customer complained to Evelyn Solis about Tynesie, a black cashier.  The customer wanted to complain directly to the store manager so Evelyn Solis directed the customer to Rodney Brown.  The customer complained directly to Rodney Brown about Tynesie. Rodney Brown did not write up or discipline Tynesie for being rude to the white customer.  Rodney Brown just talked to Tynesie.  Additionally, there was another incident where another customer complained about Tynesie to Rodney Brown but he did not terminate Tynesie.  See Affidavit of Evelyn Solis attached hereto as Exhibit "D".

13.  Halema Mentoyer, a black associate cursed a white

customer, Mike Sherwood and called him a M----- F-----.
Halema was suspended but not terminated.  See Affidavit
of Evelyn Solis attached hereto as Exhibit "D".

14.  Keisha Johnson was rude to co-workers and customers but
she was not disciplined.  Keisha Johnson was promoted
to Assistant Manager.  See Affidavit of Evelyn Solis
attached hereto as Exhibit "D".

15.  Charlene Bienemy, a black associate was rude to a
customer.  A Customer Service Manager told Evelyn Solis
that a customer was crying because Charlene Bienemy was
rude to her.  Evelyn Solis told Trymel Jones, black
assistant manager, so that he could write up Charlene
Bienemy for being rude to the customer but Trymel Jones
never wrote Charlene Bienemy up for being rude to the
customer.  See Affidavit of Evelyn Solis attached
hereto as Exhibit "D".

16.  Sabrina, an associate in the Automotive Department
asked Evelyn Solis if she could work in the front of
the store because she wanted to get out of the
Automotive Department because she discovered that the
mechanic was putting an extra tire on the car of
Tameka, a black associate.  Evelyn told Sabrina that
she should report this to management.  Sabrina told

8

Evelyn that she had already reported it to Suzanne the Assistant Manager and that Suzanne told Rodney Brown, the Store Manager.  Rodney Brown did not discipline Tameka instead he authorized Tameka to get an advance on her pay so that she could pay for the tires.  See Affidavit of Evelyn Solis attached hereto as Exhibit "D"

Wal-Mart has engaged in disparate treatment of Hernandez in violation of 42 U.S.C. §2000e et seq., Title VII by terminating Hernandez for poor customer service when Wal-Mart did not terminate Sylvia Lewis, Sandra Spillman, Lonnie Banks, Tamara Johnson, Tasha Johnson, Barbara Flowers, Tynesie, Halema Mentoyer, Keisha Johnson, Charlene Bienemy, or Tameka.

## Conclusion

Wal-Mart's Motion for Summary Judgment should be denied.

Respectfully submitted,

James A. McPherson (#09381), T.A.
Mary B. Schillesci (#25239)
McPherson & Schillesci
9128 Quince Street
New Orleans, Louisiana 70118
Telephone: (504)486-2022
Fax: (504)486-6050
Attorneys for Cheryl W. Hernandez

9

Certificate of Service

I hereby certify that the foregoing was served on all counsel of record by ~~placing a~~ copy in the United States Mail postage prepaid and properly addressed on this 26th day of March , 2001.

James A. McPherson (#09381)
Mary E. Schillesci (#25239)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHERYL W. HERNANDEZ                         CIVIL ACTION

versus                                      NUMBER 00-0260

WAL-MART STORES, INC.                       SECTION F MAG. 2

### STATEMENT OF CONTESTED MATERIAL FACTS

Plaintiff, Cheryl W. Hernandez ("Hernandez") contends that the following are contested material facts:

1.    Whether black employees who engaged in similar acts, namely: Sylvia Lewis, Sandra Spillman, Lonnie Banks, Tamara Johnson, Tasha Johnson, Barbara Flowers, Tynesie, Halema Mentoyer, Keisha Johnson, Charlene Bienemy, and Tameka were not punished similarly to Hernandez.

2.    Whether both customers and other employees complained about Keesha Johnson, a black Associate for poor customer service and whether Ms. Johnson was not disciplined for poor customer service.

3.    Whether Don Serpas wanted to write-up Sylvia Lewis, a black Associate, for being rude and discourteous but

1

someone else in management told Mr. Serpas not to write
Ms. Lewis up.

4.   Whether Sylvia Lewis, a black Department Manager yelled
at a white associate, Brenda Schiro, and told her "I'll
fix you, you think you playing with me."  Whether
Sylvia Lewis was screaming and yelling at Brenda Schiro
on the salesfloor so that a customer, Diana Beenemy and
another associate, April Netherland, overheard Sylvia
Lewis screaming and yelling at Brenda Schiro and
whether the customer and associate reported the
incident to Rodney Brown, the store manager.  Whether
Sylvia Lewis also poked at Brenda Schiro and screamed
at her in front of Rodney Brown.  Whether Rodney Brown
did not discipline Sylvia Lewis.

5.   Whether Sandra Spillman, a black associate was rude to
a white associate, Rosa Moolenkamp, calling Rosa names;
Sandra Spillman made Rosa Moolenkamp cry.  Whether
Sandra Spillman was disciplined for being rude to Rosa
Moolenkamp.

6.   Whether Sandra Spillman threw trash in a box that
Brenda Schiro was filling with damaged shoes and Brenda
Schiro asked Sandra Spillman to stop throwing trash
into the box but Sandra kept throwing trash into the

2

box.  Whether when Brenda Schiro complained to Rodney
Brown instead of telling Sandra Spillman not to throw
trash into the box, Rodney Brown removed the trash from
the box himself.

7.    Whether when Brenda Schiro would put the defective
shoes on the pallet, Sandra Spillman would throw the
shoes off of the pallet.  Whether Brenda Schiro
complained to Rodney Brown about Sandra Spillman
throwing the shoes off of the pallet.  Whether Rodney
Brown said that he would put the shoes back on the
pallet.  Whether Brenda Schiro complained to Trymel
Jones about Sandra Spillman throwing the damaged shoes
off of the pallet and Trymel Jones said that he would
give Brenda Schiro another pallet to put the shoes on
but that he would not tell Sandra Spillman anything
because Rodney Brown told him that Brenda Schiro was
having problems with Sandra Spillman and that Trymel
Jones was not to get involved.  Whether Sandra Spillman
was not disciplined for throwing the shoes off of the
pallet.

8.    Whether Lonnie Banks, a black assistant manager, was
rude to Rosa Moolenkamp when Lonnie Banks saw Rosa
crying and told Rosa that "crying is not going to get

you anywhere."   Whether Brenda Schiro told Veronica,
another assistant manager that Lonnie had been rude to
Rosa but Lonnie was never disciplined.

9.   Whether while Brenda Schiro was Department Manager she
would leave notes to the evening employees with
instructions to do certain tasks and Tamara Johnson
would initial the notes indicating that she had done
the work when she had not done the work.

10.  Whether Brenda Schiro told another employee to tell
Tamara Johnson that Brenda wanted Tamara Johnson scan a
rack of shoes and Brenda Schiro overheard the other
employee tell Tamara Johnson that Brenda wanted Tamara
to scan the rack of shoes and Tamara Johnson replied:
"You can tell Brenda she can kiss my ass."  Whether
Brenda Schiro wanted to write Tamara Johnson up for not
doing her work and for cursing on the salesfloor but
instead Rodney Brown, the black store manager, just
moved Tamara Johnson out of the shoe department.

11.  Whether Tasha Johnson, a black associate, screamed at
Brenda Schiro and threatened her, pointing her finger
in Brenda's face and Brenda Schiro told Tasha Johnson
to stop pointing her finger in Brenda's face.  Whether
Tasha Johnson told Brenda "you are lucking that is all

4

I got in your face."  Whether Brenda Schiro complained
to Rodney Brown but Rodney Brown did not discipline
Tasha Johnson.

12.  Whether Barbara Flowers, a black associate upset a
white customer.  Whether after the customer and her
husband complained about Barbara Flowers,  Barbara
Flowers was sent home but she was not written up or
terminated.

13.  Whether there have been several complaints about black
cashiers.  Whether a white customer complained to
Evelyn Solis about Tynesie, a black cashier and whether
the customer complained directly to Rodney Brown about
Tynesie but Rodney did not write up or discipline
Tynesie for being rude to the white customer instead
Rodney Brown just talked to Tynesie.  Whether there was
another incident where another customer complained
about Tynesie to Rodney Brown but he did not terminate
Tynesie.

14.  Whether Halema Mentoyer, a black associate cursed a
white customer, Mike Sherwood and called him a M-----
F-----.  Whether Halema was suspended but not
terminated.

15.  Whether Keisha Johnson was rude to co-workers and

customers but was not disciplined but instead was
promoted to Assistant Manager.

16. Whether Charlene Bienemy, a black associate was rude to
a customer and whether the customer cried because
Charlene Bienemy was rude to her. Whether Evelyn Solis
told Trymel Jones, black assistant manager, so that he
could write up Charlene Bienemy for being rude to the
customer but Trymel Jones never wrote Charlene Bienemy
up for being rude to the customer.

17. Whether Sabrina, an associate in the Automotive
Department asked Evelyn Solis if she could work in the
front of the store because she wanted to get out of the
Automotive Department because she discovered that the
mechanic was putting an extra tire on the car of
Tameka, a black associate. Whether Sabrina reported
the incident to Suzanne the Assistant Manager and
Suzanne told Rodney Brown, the Store Manager. Whether
Rodney Brown did not discipline Tameka instead he
authorized Tameka to get an advance on her pay so that
she could pay for the tires.

6

Respectfully submitted,

James A. McPherson (#09381), T.A.
Mary E. Schillesci (#25239)
McPherson & Schillesci
9128 Quince Street
New Orleans, Louisiana 70118
Telephone: (504)486-2022
Fax: (504)486-6050
Attorneys for Cheryl W. Hernandez

### Certificate of Service

I hereby certify that the foregoing was served on all
counsel of record by placing a copy in the United States Mail
postage prepaid and properly addressed on this 26th day of
March, 2001.

James A. McPherson (#09381)
Mary E. Schillesci (#25239)

7

# SEPARATION NOTICE ALLEGING DISQUALIFICATION

1. NAME _Cheryl Hernandez_   SS NO. _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_

2. SEPARATION DATE _2/26/99_   4. DATE HIRED _7/31/89_   5. DATE LAST WORKED _2/19/99_

PLEASE PROVIDE DETAILED EXPLANATION for item checked below. Should this individual file a claim for unemployment insurance benefits complete facts will enable this agency to make an equitable decision.

6. **REASON FOR LEAVING**

01 ☐ Voluntary Leaving (Quit)

02 ☒ Discharge, (Fired)

03 ☐ Lack of Work (R.I.F.)

04 ☐ Leave of Absence

05 ☐ Not Physically Able to Work

06 ☐ School Employee Contract

07 ☐ Refused Other Suitable Work

08 ☐ Labor Dispute

09 ☐ Retirement, Pension

10 ☐ Other

**Microfilm Reference Number**

**DO NOT WRITE IN THIS SPACE**

7. VACATION/SEVERANCE/DISMISSAL/BONUS/HOLIDAY PAY INFORMATION. The employee received or will receive:
( ) Vacation            $ _____ week(s) _____
( ) Severance/Dismissal  $ _____ week(s) _____
( ) Bonus               $ _____ week pd _____
( ) Holiday Pay         $ _____ week(s) _____

Lump sum ( ) vacation    ( ) accrued leave
( ) severance/dismissal pay ( ) bonus
( ) holiday pay ( ) other remuneration
covered a period of _____ week(s)

EXPLANATION: _Poor Customer Service_

**EXHIBIT**

_A_

I certify that the worker whose name and social security number appear above has been separated from work and that the above information is true and correct. I further certify that the individual named above has been handed or mailed a copy of this notice.

8. WALMART 0909
8333 WEST JUDGE PEREZ DR.
CHALMETTE, LA. 70043
Employer Name

9. _504-271-4167_
Phone-Area Code & No.

10. _____
Employer Acct. No.

11. _____
Address   Street/Box   City   State

12. _____
Zip Code

13. _Ceua Dona_
Signature

14. _Personnel_
Title

15. _2/26/99_
Date

FILL OUT IN TRIPLICATE. MAIL ORIGINAL TO - Administrator, Louisiana Department of Labor, Post Office Box 94094, Baton Rouge, LA 70804-9094, WITHIN 72 HOURS after separation. Give the employee copy to the worker within 72 hours and retain the employer copy for your files.

Failure to submit this notice within the specified time limits may forfeit your right to appeal. It must be submitted within 72 hours after the worker's separation from employ.

DUPLICATE - WORKER COPY

State of Louisiana

Parish of St. Bernard

      Before Me, the undersigned Notary Public personally came and appeared: Don A. Serpas who after being duly sworn did depose and state that:

      I reside at 1900 Linds Lane, St. Bernard, Louisiana, 70085.

      I was employed by Wal-Mart from May 1993 through April or May 1997.  I worked at the Wal-Mart on Judge Perez in Chalmette as a Support Manager.

      While I was working at Wal-Mart in Chalmette I witnessed and had personal knowledge of several incidents where Black Employees should have been disciplined but were not disciplined, including:

      1. Both customers and other employees complained about a Black Associate, Keesha Johnson's poor customer service and she was not disciplined.

      2. I wanted to write-up Sylvia Lewis, a Black Associate, for being rude and discourteous but
            someone else in Management told me not to write her up

 

Don A. Serpas

SWORN TO AND SUBSCRIBED BEFORE ME
ON THIS 26th DAY OF March , 2001.

NOTARY PUBLIC

EXHIBIT

B

Page 1

State of Louisiana

Parish of St. Bernard

      Before Me, the undersigned Notary Public personally came and appeared: Brenda Schiro who after being duly sworn did depose and state that:

      I reside at 1913 Heights Drive, St. Bernard, Louisiana, 7 0085.

      I was employed by Wal-Mart in Chalmette, Louisiana from M ay 5, 1986 until I was terminated on October 10, 2000.  I was hir ed as a Back-up Department Manager and when I was terminated I wa s a Department Manager.

      While I was working at Wal-Mart I witnessed several incid ents where Black Employees should have been disciplined but were not, including:

      1. Sylvia Lewis, a Black Department Manager yelle d at me and told me that "I'll fix you, you think you playing wit h me."  Sylvia Lewis was screaming and yelling at me on the sales floor.  A customer, Diana Beenemy and another associate, April Ne therland, overheard Sylvia Lewis yell at me.  Diana Beenemy and A pril Netherland and told Rodney Brown, the Black Store Manager, t hat Sylvia Lewis yelled at me on the salesfloor.  Sylvia Lewis al so poked at me and screamed at me in front of Rodney Brown.  Rodn ey Brown did not discipline Sylvia Lewis.

      2. Sandra Splillman, a Black Associate was rude t o a White associate, Rosa Moolenkamp, calling Rosa names and made Rosa cry.  Sandra Spillman was not disciplined for calling Rosa names and making her cry.

      3. Sandra Spillman was throwing trash in a box of damaged shoes that I was boxing up to send back.  I asked Sandra not to throw trash in the box but she kept throwing trash into t he box so I complained to Rodney Brown but instead of telling San dra anything Rodney took the trash out of the box himself.  Sandr a would also throw my damaged shoes off of the pallet of damages. I complained to Rodney about Sandra throwing my damaged shoes o ff of the pallet.  Rodney said that he would put the shoes back o n the pallet.  I complained to Trymel Jones about Sandra throwing the damaged shoes off of the pallet and he said that he would ge t me another pallet to put the damaged shoes on but he would not tell Sandra anything for throwing the shoes off of the pallet bec ause Rodney  told him that I was having problems with Sandra and

Page 1

EXHIBIT

C

that he was not to get involved.  Sandra was not disciplined for throwing the shoes off of the pallet.

4. Lonnie Banks, a Black Assistant Manager, was rude to Rosa Moolenkamp, Lonnie saw Rosa crying and told Rosa that crying is not going to get you anywhere.  I told Veronica another Assistant Manager that Lonnie had been rude to Rosa but Lonnie was never disciplined for being rude to Rosa.

5. While I was Department Manager I would leave notes to the evening employees with instructions to do certain tasks.  Tamara Johnson would initial the notes indicating that she had done the work when she had not done the work.  On one occassion I told another employee to have Tamara Johnson scan a rack of shoes.  I overheard the other employee tell Tamara Johnson that I wanted her to scan the rack of shoes.  Tamara Johnson replied:  "You can tell Brenda she can kiss my ass."  As Department Manager I wanted to write Tamara Johnson up for not doing her work and for cursing on the salesfloor but instead Rodney Brown, the Black Store Manager, just moved Tamara Johnson out of the Shoe Department.

6. Tasha Johnson, a Black Associate screamed at me and threatened me, pointing her finger in my face.  I told her to stop pointing her finger in my face and she told me that "you are lucking that is all I got in your face."  I complained to Rodney Brown about Tasha Johnson but Rodney did not discipline Tasha.

I was terminated because of my race and retailiation because I complained to Wal-Mart and to the Equal Employment Opportunity Commission.  Wal-Mart says that I was terminated because three boxes of shoes had not been marked down.

_Brenda Schiro_
Brenda Schiro

SWORN TO AND SUBSCRIBED BEFORE ME
ON THIS 26ᵗʰ DAY OF March , 2001.

_____
NOTARY PUBLIC

State of Louisiana

Parish of St. Bernard

      Before Me, the undersigned Notary Public personally came and appeared: Evelyn Solis who after being duly sworn did depose and state that:

      I reside at 2329 Plaza Drive, Chalmette, Louisiana, 70043

      I have been employed by Wal-Mart in Chalmette, Louisiana since May 5, 1986. I am presently employed by Wal-Mart as Head Customer Service Manager.

      I have witnessed and have personal knowledge of several incidents where Black Employees should have been disciplined but were not disciplined, including:

      1. Barbara Flowers, a Black Associate upset a white customer. The customer and her husband both complained about Barbara Flowers. Barbara Flowers was sent home but she was not written up or terminated. After that incident we were told not to put Barbara Flowers on the registers. I went to Rodney Brown, the Black Store Manager, to ask why Barbara Flowers could not run the register; Rodney told me that there was an incident with a customer and that we could not put Barbara Flowers on the register.

      2. There have been alot of complaints about Black Cashiers, a white customer came to me to complain about Tynesie, a Black Cashier; the customer wanted to complain to the store manager so she complained to Rodney Brown about Tynesie; Rodney just talked to Tynesie but did not write her up or discipline her for being rude to the white customer. There was another incident when another customer complained about Tynesie to Rodney but Tynesie was not terminated.

      3. Halema Mentoyer, a Black Associate cursed a white customer, Mike Sherwood and called him a M----- F-----. Halema was suspended but was not fired.

      4. Keisha Johnson was rude to co-workers and customers but she was not disciplined. Keisha was promoted to Assistant Manager.

      5. Charlene Bienemy, a Black Associate was rude to a customer, a CSM came over and got me and told me that customer was crying because Charlene Bienemy was rude to her. I told Trymel Jon

Page 1



es, a Black Assistant Manager, so that he could write up Charlene
Bienemy for being rude to the customer but he never wrote her up
.

6. A Black Associate, Tameka was having one tire replaced
on her car in the Automotive Department.  Sabrina an Associate i
n the Automotive Department came to me and asked if she could wor
k in the front of the store because she wanted to get out of the
Automotive Department because something funny was going on in tha
t department.  Sabrina told me that the mechanic was putting an e
xtra tire on Tameka's car.  I told Sabrina that she should tell m
anagement.  Sabrina told me that she had already reported the inc
ident to Suzanne the Assistant Manager and that Suzanne told Rodn
ey Brown the Store Manager and that all Rodney did was authorize
Tameka to get an advance on her pay so that she could pay for the
tires.

7. I consoled Rosa several times after Sandra Spillman, a
Black Associate insulted Rosa.

Evelyn Solis

SWORN TO AND SUBSCRIBED BEFORE ME
ON THIS 26 DAY OF 3 , 2001.

NOTARY PUBLIC

Page 2