FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L,

2001 APR -3 | A 10: 58

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHERYL W. HERNANDEZ | * | CIVIL ACTION |
| VERSUS | * | NUMBER 00-0260 |
| WAL-MART STORES, INC. | * | JUDGE MARTIN L.C. FELDMAN |
| * * * * * * * * * * * * * * * * * * * * * | | MAGISTRATE JOSEPH C. WILKINSON |

DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), submits this Memorandum to respond to specific allegations raised in plaintiff's Opposition to defendant's Motion for Summary Judgment. For the following reasons, and the reasons provided in defendant's original Memorandum, Wal-Mart is entitled to summary judgment, dismissing plaintiff's lawsuit.

Plaintiff's Opposition, which incorporates the affidavits of three former and current employees, is based solely upon the argument that Wal-Mart engaged in disparate treatment of plaintiff by terminating her for "poor customer service" because eleven black associates, who allegedly committed various other different infractions, were not terminated.[1] See Opposition,

---

[1]    Plaintiff attempts to confuse the disparate treatment issue by suggesting that she was merely terminated for "poor customer service," when plaintiff admitted that Mr. Brown listed that reason for her termination as an accommodation to her so that her file would not reflect that she made an offensive racial remark to a customer. See

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc.No._____

p. 9. Critically, plaintiff does not dispute the determinative facts that: (1) she committed the immediately terminable offense of making a racially-offensive statement to a customer; (2) no other Wal-Mart associate committed that offense; (3) such an offense was more serious than the other alleged offenses or instances of "poor customer service"; and, (4) no other customer threatened to complain to both "higher-ups" at the Company and the news media, resulting in the involvement of the District Manager, Pat Meadowcroft, in the termination decision. Instead, the affidavits supporting plaintiff's Opposition simply relate different alleged incidents that plaintiff believes should have resulted in the termination of various co-workers. Plaintiff's affidavits, which are rife with hearsay and conclusory allegations, and legally deficient in several other respects, also contain incomplete or inaccurate information. However, even accepting the affidavits as true and correct for purposes of this Motion, those affidavits do not establish that the black associates identified by plaintiff were similarly-situated to plaintiff, that they engaged in conduct that was "nearly identical" to plaintiff's misconduct, or even that the same individual allegedly guilty of discrimination (Ms. Meadowcroft, a white female) was involved. Accordingly, Wal-Mart is entitled to summary judgment as a matter of law.

A.    The Individuals Identified By Plaintiff Were Not Similarly-Situated, Did Not Commit "Nearly Identical" Misconduct, And/Or Did Not Receive More Favorable Treatment.

1.    Sylvia Lewis

At an undetermined time prior to April or May 1997, a former hourly Support Manager, Don Serpas, "wanted to" write Ms. Lewis up "for being rude and discourteous" to some

Defendant's Original Memorandum, pp. 3, 14-15.

unidentified individual who may have been either a customer or a co-worker, and who may or may not have complained.[2] *Id.* at 3. However, an unidentified "someone else in management," who may have been black or white, and who may or may not have been involved with plaintiff's termination, told Mr. Serpas not to write Ms. Lewis up for the unspecified act of rudeness. *Id.*

Plaintiff does not assert that Ms. Lewis either made a racial comment or was even involved with a customer, as opposed to a co-worker. It is clear, however, that Mr. Serpas did not consider Ms. Lewis' rudeness to be a terminable offense, like plaintiff's, as he only wanted to write her up, not terminate her. In any event, Serpas' Affidavit fails to identify any specific facts that suggest that Ms. Lewis was either similarly-situated to plaintiff, or that she engaged in "nearly identical" misconduct.

At another undetermined time, Ms. Lewis allegedly yelled at a co-worker, Brenda Schiro, but was not disciplined by Rodney Brown.[3] *Id.* at 3-4. Accepting plaintiff's allegations as true, the alleged yelling incident with Ms. Schiro did not involve comments made to a customer, much less racial comments. In addition to the fact that Ms. Lewis was not similarly-situated to plaintiff and did not engage in nearly identical behavior, plaintiff also acknowledges

---

[2]      Mr. Serpas was employed at Wal-Mart from May 1993 through April or May of 1997, approximately 21-22 months before plaintiff's termination. *See* Opposition, Exhibit "B."

[3]      Schiro was terminated in October 2000, and has filed an EEOC Charge against Wal-Mart. *See* Exhibit "1." Schiro was terminated by Laura Hooter, the District Manager for Jewelry & Shoes. *Id.* The Schiro Affidavit (Opposition, Exhibit "C"), in addition to containing numerous hearsay statements, relates solely to incidents of disputes between employees, mostly involving Ms. Schiro and her co-workers. The Affidavit does not contain any reference to customers or complaints by customers, nor does it identify any racial statements relating to her disputes with her co-workers. Ms. Schiro's Affidavit does nothing more than attempt to create a "trial within a trial" regarding her own Charge of race discrimination against Wal-Mart. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000).

that Ms. Lewis was a Department Manager, while plaintiff was a cashier in another department. *Id.* at 3. *See Wyvill v. United Companies Life Ins. Co.,* 212 F.3d 296, 305 (5th Cir. 2000) (no disparate treatment where plaintiff and co-worker held different jobs and different decision-makers were involved).[4]

### 2.    Sandra Spillman

Ms. Spillman's alleged misconduct consisted of: (a) being rude to a co-worker; (b) throwing trash in a box used for damaged shoes; and, (c) throwing defective shoes off of a pallet. *See* Opposition, pp. 4-5. Ms. Spillman's conduct, which occurred at some undetermined time, did not involve customers, much less racial comments made to customers, and was not even remotely similar to plaintiff's misconduct. Once again, to the extent that Rodney Brown allegedly failed to properly discipline Ms. Spillman, plaintiff does not allege that Mr. Brown discriminated against her.

### 3.    Loni Banks

Ms. Banks was allegedly rude to a subordinate. *Id.* at 5. Ms. Banks, as an Assistant Manager, second in rank and authority only to the Store Manager or Co-Manager, was not similarly-situated to plaintiff, a cashier. Moreover, even if Ms. Banks held a position similar to plaintiff's, advising a subordinate, not a customer, that "crying is not going to get you anywhere," is simply not comparable to making an offensive racial comment to a customer.

---

[4]    To the extent that plaintiff is suggesting that Mr. Brown treated Ms. Lewis, or any other black associate, more favorably, plaintiff specifically testified that he did not make the final termination decision in her case and, more importantly, that he did not discriminate against her. *See* Defendant's Original Memorandum, pp. 3-4, 16.

4.    <u>Tamara Johnson</u>

Ms. Johnson, a Shoe Department associate, was purportedly guilty of not doing her assigned work and of advising another associate to tell Ms. Schiro to "kiss her ass." *Id.* at 5-6. Once again, those alleged actions do not involve either customers or racial comments. While plaintiff does not allege that Ms. Johnson was not disciplined for her actions, she pointedly fails to mention that Ms. Johnson was, in fact, disciplined by Ms. Schiro for both making the comment about Schiro and for not doing her assigned work, and was suspended from work for a decision-making day, the last step in the disciplinary process before termination. *See* Exhibit "2A." Interestingly, Ms. Johnson's last evaluation, in February 1998, specifically noted as her strength that she was "good with customers." *See* Exhibit "2B."

5.    <u>Tasha Johnson</u>

Ms. Johnson, like Ms. Lewis, purportedly screamed at Ms. Schiro and pointed her finger in her face. *See* Opposition, p. 6. The alleged incident did not involve either customers or racial comments, and the Manager involved was Rodney Brown. Plaintiff's evidence, or more appropriately, lack of evidence, relating to Ms. Johnson, does not, by any stretch of the imagination, suggest that she was similarly-situated to plaintiff.

6.    <u>Barbara Flowers</u>

Ms. Flowers, at some unspecified time, purportedly "upset" an unidentified white customer who reported the unspecified action to some unidentified person. *Id.* at 6-7 and Plaintiff's Exhibit "D," ¶ 1. While the incident involved an alleged customer complaint, there

-5-

is absolutely no indication as to why the customer was upset, what she complained about, or to whom. Furthermore, there is no reference to a racial comment being made, or to the customer complaining to "higher-ups" or the media, as occurred in plaintiff's case.[5]

7.    "Tynesie"

"Tynesie" (presumably Tyneise Roberts) purportedly was the subject of two customer complaints at some undetermined time. *See* Opposition, p. 7 and Plaintiff's Exhibit "D," ¶ 2. The first complaint involved some type of unspecified rudeness, and the second involved an alleged complaint of a completely unspecified nature. *Id.* There is no indication as to what the customers complained to Mr. Brown about and, therefore, no basis to establish that Ms. Roberts was similarly-situated to plaintiff. However, there is clearly no allegation that Ms. Roberts made a racial comment to a customer. Most significantly, Ms. Roberts' file indicates that she, like plaintiff, was terminated in July 2000 for "inappropriate behavior towards [a] customer." *See* Exhibit "2-D." Rather than establishing disparate treatment, Ms. Roberts' termination confirms that Wal-Mart terminated both black and white associates for offensive conduct toward customers.

8.    Helema Metoyer

Plaintiff reasserts that Ms. Metoyer cursed at a customer and was only suspended. *See* Opposition, pp. 7-8. The allegation that Metoyer was merely suspended, not terminated, is

---

[5]    Ms. Flowers' file contains an undated Performance Coaching form indicating that she received a decision-making day from her supervisor, Sheryl Chartier, for being rude and argumentative with a customer. *See* Exhibit "2-C." It is unclear whether the disciplinary action related to the incident identified by plaintiff. However, Ms. Flowers' coaching is a good example of the type of conduct (rudeness) for which an associate could receive a decision-making day, as opposed to the immediately terminable offense of making an offensive racial remark to a customer.

misleading and inaccurate.  As previously indicated, Metoyer was initially suspended by Ms. Banks pending Metoyer's meeting with Mr. Brown.  *See* Defendant's Original Memorandum, p. 13 and Exhibits E & F, ¶¶ 4-6.  Ms. Banks specifically advised Ms. Metoyer when she suspended her that she "probably would not have a job" after she spoke to Mr. Brown, and when Metoyer failed to return to the store to meet with Mr. Brown, she was terminated.  *Id.*  Although Metoyer did not make a racial comment, she was the only other associate who arguably committed as serious an offense as plaintiff, and was, therefore, similarly-situated.  Metoyer was, however, like plaintiff, suspended and then terminated.  Accordingly, it is undisputed that she did not receive more favorable treatment than plaintiff.[6]

### 9.    Keisha Johnson

Once again, plaintiff only asserts, in a conclusory fashion, that Ms. Johnson was allegedly "rude to co-workers and customers" who complained about her unspecified "poor customer service."  *See* Opposition, pp. 3 & 8.  In addition to the fact that rudeness cannot be considered "nearly identical" to an offensive racial comment, plaintiff does not even attempt to identify any specific facts relating to when the alleged rudeness occurred, what the rudeness consisted of, who was involved, when any complaints may have been made, who made the complaints, or who received them.  In sum, plaintiff has not alleged any facts that could arguably

---

[6]    Ms. Solis, unlike Mr. Brown and Ms. Banks, was not involved in the discipline of Ms. Metoyer and could only offer the conclusory allegation and erroneous belief that Ms. Metoyer was not terminated when, in fact, she was unquestionably terminated after the incident with the customer.  *See* Defendant's Original Exhibits "E-5" and "F." Accordingly, Ms. Solis' conclusory allegation does not create a genuine issue as to whether Ms. Metoyer received more favorable treatment.  *See Malveaux v. Condea Vista Co.*, 85 F.Supp.2d 655, 659 (W.D. La. 1999).

establish that Ms. Johnson was similarly-situated or that she engaged in "nearly identical" behavior.

    10.    <u>Charlene Bienemy</u>

Ms. Bienemy was also allegedly rude to an unidentified customer at some undetermined time and in an unspecified manner. *Id.* Furthermore, there is no indication that any member of management, other than Trymel Jones, was even made aware of the unspecified act of rudeness, which did not involve a racial comment. Again, even assuming, for purposes of this Motion, that Bienemy was rude, she was not similarly-situated to plaintiff.[7]

    11.    <u>"Tameka"</u>

"Tameka," presumably Tomica Harkless, purportedly had an extra tire put on her car. *Id.* at 8-9. When reported to Mr. Brown, he allegedly authorized her to get an advance on her pay so that she could pay for the tire. *Id.* While Mr. Brown and Loss Prevention had insufficient proof to terminate Ms. Harkless, (*see* Exhibit "2"), even assuming that Ms. Harkless had committed a terminable offense, it cannot reasonably be asserted that her misconduct was in any way similar, much less "nearly identical," to making a racial comment to a customer.

CONCLUSION

In a store the size of a Wal-Mart, customer complaints about rudeness, real or perceived, are not uncommon, as are complaints among employees regarding disputes with co-

---

[7]    It can also hardly be suggested that Ms. Bienemy received favorable treatment at Wal-Mart. In May 1998, she was given a decision-making day for refusing to work in an assigned area. *See* Exhibit "2E." She was terminated in January 1999 for three days unreported absence. *See* Exhibit "2F."

workers. In fact, plaintiff's affiants, Ms. Schiro and Ms. Solis, have been the subject of several complaints to management themselves. *See* Exhibit "2." What is not common, however, and what will not be tolerated by Wal-Mart in any form, whether intentional or not, are offensive racial or ethnic remarks to customers. Plaintiff, and plaintiff alone, admittedly made such a remark.

In order to defeat summary judgment, plaintiff must produce sufficient evidence to create a fact question regarding allegedly disparate treatment. Even accepting all of plaintiff's allegations as true for purposes of this Motion, plaintiff can only assert that unspecified customer complaints were made at unspecified times to either unspecified members of management, or managers that admittedly did not discriminate against her. Plaintiff has not, and cannot, show that any similarly-situated black associate made an inappropriate racial comment to a customer, much less a racial comment prompting a heated customer complaint, resulting in the involvement of the District Manager, for which that associate was not suspended and then terminated. In fact, plaintiff does not even attempt to assert that any other associate engaged in misconduct that was "nearly identical" to hers, or that Ms. Meadowcroft, one of the decision-makers in her case, had engaged in disparate treatment of associates. As previously indicated, the only associates who committed arguably similar offenses (but not involving racial comments), Halema Metoyer and Tyneise Roberts, were like plaintiff, suspended and terminated. As plaintiff cannot, as a matter of law, establish disparate treatment, she cannot proceed to trial with her baseless Title VII claim.

Respectfully submitted,

_____

Stephen P. Beiser, T.A. (#14074)
Kevin L. O'Dea (#01514)
McGLINCHEY STAFFORD
A Professional Limited Liability Company
643 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 586-1200
Attorneys for Defendant
Wal-Mart Stores, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _____30th_____ day
of_____March_____, 20 01, served a copy of
the foregoing pleading on counsel for all parties to this
proceeding, by mailing the same by United States mail, Hand Delivery
properly addressed, and first class postage prepaid.

_____

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 270-A1-1127 |

Louisiana Comm. On Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Brenda L. Schiro | (504) 682-3072 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1913 Heights Drive, Saint Bernard, LA 70085 | | 02/15/1960 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| WAL MART | Cat D (501 +) | (504) 271-9010 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 8333 JUDGE PEREZ DRIVE, Chalmette, LA 70092 | | 087 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | EARLIEST          LATEST |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)* | 08/29/2000   10/10/2000 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I was demoted from my position of shoe department manager on August 29, 2000. I was on a medical leave of absence from then until October 9, 2000. I was discharged on October 10, 2000 when I was unable to write up a "plan of action" of what I was going to do to correct problems in the shoe department. I had complained that the Black store manager, Rodney Brown, was blocking my shoe department areas with stock belonging to other departments or which should have been stored in our storage areas out of customers' way.

Brown told me that I would have gotten more cooperation from him if I had not reported him to the home office. Laura Hooter, district manager over jewelry and shoes, demoted me because she said I was not getting the job done. She discharged me for "insubordination" when I could not complete a "plan of action" to show corrections I would make in the shoe department to bring it up to standard.

I believe I have been discriminated against because of my race, White, in violation of Title VII of the Civil Rights Act of 1964, as amended, because:

I was replaced by a Black named Warren Brown. His stock room and department space are not blocked with stock as it was when Rodney Brown had kept the areas blocked while I was in charge of the shoe department.

** Text is Continued on Attached Sheet(s) **

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| 1-18-01                *Brenda Schiro* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* |
| Date              Charging Party *(Signature)* | |

RESP

EXHIBIT
"1"

Jan 11 09:50 2001  CP Initials _____  Chg # , Attachment Page 1

------------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
------------------------------------------------------------------------


Rodney Brown and Laura Hooter have asked Warren Brown what they can do
to help him, whereas they refused to help me when I asked for assistance
to improve my sales area.

Rodney Brown allowed Black associates/department managers such as
Sylvia, ~~Julia~~ and Tasha to be abusive to me - Sylvia was poking me with
her finger in the presence of Rodney Brown - and did nothing about it.

*TAMARA*

## A F F I D A V I T

STATE OF LOUISIANA
PARISH OF ORLEANS

          **BEFORE ME**, the undersigned authority, personally came and appeared:

### RODNEY BROWN

who, after being duly sworn, did depose and say:

1.     Affiant has personal knowledge of all facts related herein;

2.     In affiant's store, which employs hundreds of associates, customer complaints about rudeness, real or perceived, are not uncommon, as are complaints among associates regarding disputes with co-workers;

3.     Brenda Schiro and Evelyn Solis have been the subject of several complaints to management from co-workers and customers;

4.     Attached to this Affidavit as Exhibits "2A" and "2B" are true and correct copies of the Exit Interview Form and February 1998 Evaluation Form for Tamara Johnson maintained in the regular course of business in accordance with Wal-Mart's policies, in the associate personnel file maintained at Store 909 of Tamara Johnson;

5.     Attached to this Affidavit as Exhibit "2C" is a true and correct copy of an undated Performance Coaching Form maintained in the regular course of business in accordance with Wal-Mart's policies in the associate personnel file maintained at Store 909 of Barbara Flowers;

6.     Attached to this Affidavit as Exhibit "2D" is a true and correct copy of the Exit Interview Form maintained in the regular course of business in accordance with Wal-Mart's policies, in the associate personnel file maintained at Store 909 of Tyneise Roberts;

7.     Evelyn Solis, a Customer Service Manager ("CSM"), had no involvement in the discipline, suspension, or termination of Helema Metoyer in January 1998;

8.     Attached to this Affidavit as Exhibits "2E" and "2F" are true and correct copies of the Performance Coaching Form and Exit Interview Form maintained in the regular course of business in accordance with Wal-Mart's

EXHIBIT

"2"

policies, in the associate personnel file maintained at Store 909 of Charlene Bienemy;

9.    Affiant received notice that Tomica Harkless had received Company property that she did not pay for.  Accordingly, in accordance with Company policy, the matter was investigated by affiant and in-store Loss Prevention personnel, and the determination was made by the District Loss Prevention Supervisor that there was insufficient proof relating to Ms. Harkless;

RODNEY BROWN

Sworn to and subscribed before me this 30 day of _____, 2001.

_____
NOTARY PUBLIC

258311.1

# COACHING FOR IMPROVEMENT FORM

Name: _Tamara Johnson_ SSN: _____ Location: _Shoe dept_ Dept: _25_

Position: _Sale Clerk_ Date: _1-26-98_

Previous coachings and/or discussions: _____

_____

The following was observed of this Associate's behavior and/or performance: _____

The Associate tell Tamara she need
to take the relyunt. Tamara turn and
tell her that I can kiss her ass.
Another associate hear me question her about
what Tamara said. Tamara admit to saying
it

What is the impact of this behavior/performance on customer service, other Associates, and the profitability of the operating unit? _____

Disrepecting Dept MGR.
Fail Tamase

The behavior or performance expected next time: _____

_____

_____

The next level of corrective action if this behavior/performance continues will be: _____

_____

Written plan of action to be completed by the Associate: _____

_____

_____

_____

Associate's Comments: _____

_____

_____

_____

| | Print Name: | Signatures: | Level of Coaching |
|---|---|---|---|
| Associate coached: | T. Johnson | J. Johnson | ___ Written Coaching |
| Supervisor: | Brenda Schiro | Brenda Schiro | ✓ Decision-Making Day |
| Witness: | Suzanne Thompson | Suzanne Thompson | |

Next Level of Supervision**: _____    _____

**Only required if the Associate refuses to sign the Coaching for Improvement Form.

WMP-63B (9/97)

EXHIBIT

"2A"

# COACHING FOR IMPROVEMENT FORM

**Name:** Tamara Johnson **SSN:** _____ **Location:** sla dept **Dept:** _____ 25

**Position:** Sale Clerk **Date:** 1-26-98

**Previous coachings and/or discussions:** _____

**The following was observed of this Associates behavior and/or performance:** _____

Not doing Note that was left. Signing them saying you complete the notes, 2 time

**What is the impact of this behavior/performance on customer service, other Associates, and the profitability of the operating unit?** _____

Causing double the work the next day wasting payroll dollar.

**The behavior or performance expected next time:** _____

Must be done + complete. Will be double checked.

**The next level of corrective action if this behavior/performance continues will be:** Coaching Decision making day

**Written plan of action to be completed by the Associate:** _____

_____
_____
_____
_____
_____

**Associates Comments:** _____

_____
_____
_____

|  | **Print Name:** | **Signatures:** | **Level of Coaching** |
|---|---|---|---|
| **Associate coached:** | T. Johnson | Johnson | / Written Coaching |
| **Supervisor:** | B. Selwin | Brenda Shim | Decision-Making Day |
| **Witness:** | Suzanne Thompson | Suzanne Thompson | |
| **Next Level of Supervision\*\*:** | _____ | _____ | |

\*\*Only required if the Associate refuses to sign the Coaching for Improvement Form.     #9988664 - 9-97

# COACHING FOR IMPROVEMENT FORM

Name: _Tamara Johnson_ SSN: _____ Location: _Shoe dept_ Dept: _25_

Position: _Sale Clerk_                          Date: _1-26-98_

Previous coachings and/or discussions: _____

The following was observed of this Associates behavior and/or performance: _____

_Hanging Around Front Check out_

_talking_

What is the impact of this behavior/performance on customer service, other Associates, and the profitability of the operating unit?

_Not doing notes that was left_

_for you to do, I checked it is was not_

_done i, done_

_Dept not zone, Customer not Asst._

The behavior or performance expected next time: _Coaching_

_Decision Making day_

The next level of corrective action if this behavior/performance continues will be: _____

Written plan of action to be completed by the Associate: _____

Associates Comments: _____

|  | Print Name: | Signatures: | Level of Coaching |
|---|---|---|---|
| Associate coached: | T. Johnson | S. Johnson | / Written Coaching |
| Supervisor: | Brenda Schira | Brenda Schira | Decision-Making Day |
| Witness: | Suzanne Thompson | Suzanne Thompson | |
| Next Level of Supervision**: | _____ | _____ | |

**Only required if the Associate refuses to sign the Coaching for Improvement Form.    #9988664 - 9-97

# COACHING FOR IMPROVEMENT FORM

**Name:** _Tamara John Sch._  **SSN:** _____ **Location:** _Shoe_  **Dept:** _25_

**Position:** _Sik Clerk_  **Date:** _1 - 21 - 5-8_

**Previous coachings and/or discussions:** _____

_____

**The following was observed of this Associates behavior and/or performance:** _____

_Not doing project that are left for you_
_that I had Jenny to tell you to do_
_than not completing note I left you_
_to do after Jen told you._
_twice you told Jen you are leaving it to_
_Christina to do. Not filling rack._

**What is the** impact of this behavior/performance on customer service, other Associates, and the profitability of the operating unit?

_Chase another person to do what_
_you was told do. (wasting payroll)_

**The behavior or performance expected next time:** _To complete any note or project_
_left for you to do_
_have member of manager check dept before leaving_

**The next level of corrective action if this behavior/performance continues will be:** _____
_written coaching_

**Written plan of action to be completed by the Associate:** _____

_____

_____

_____

_____

**Associates Comments:** _____

_____

_____

| | **Print Name:** | **Signatures:** | **Level of Coaching** |
|---|---|---|---|
| **Associate coached:** | Tamara Johnson | Tamara John | **Written Coaching** |
| **Supervisor:** | Brenda Schiro | Brenda Schiro | **Decision-Making Day** |
| **Witness:** | Richa Engolio | R. Engle #'87 | |
| **Next Level of Supervision**\*\*: | | | |

\*\*Only required if the Associate refuses to sign the Coaching for Improvement Form.    #9988664 - 9-97

## ASSOCIATE EVALUATION

| | |
|---|---|
| NAME: TAMARA JOHNSON | POSITION: CASHIER |
| SS#: 1712          STORE: 0909 | AREA OF RESPONSIBILITY: CHECKOUTS |
| REVIEW PERIOD: 11-13-97 | CURRENT PAY RATE: |
| FROM: 02-11-98          TO: 11-13-98 | NEW PAY RATE: |

☐ 90 DAY                    ☐ OUTSTANDING      ☐ STANDARD

☒ ANNUAL      ☐ FOLLOW-UP      ☐ ABOVE STANDARD   ☒ BELOW STANDARD

### PERSONAL DEVELOPMENT

**1. RESPECT FOR THE INDIVIDUAL:**      (List strengths & areas of improvement)

· Servant Leadership          · People Development          · Honesty & Integrity Always          · Empowering Others
· Confidentiality          · Creates & supports a working environment that embraces the diverse backgrounds of others.

| |
|---|
| TAMARA NEEDS TO SHOW MORE LEADERSHIP AT THE FRONT CHECKOUTS. |
| |
| TAMARA DOES NOT SUPPORTS HER FELLOW WORKERS AT THE CHECKOUTS. |
| |

**2. SERVICE TO OUR CUSTOMERS** (INTERNAL & EXTERNAL): (List strengths & areas of improvement)

· Quality Always          · 10-Foot Rule          · Dress Code (name badge, vest, smock, etc.)
· Satisfaction Guaranteed (consistently meets or exceeds the Customer's needs).

| |
|---|
| TAMARA FOLLOWS THE 10 FOOT ATTITUDE AT THE FRONT CHECKOUTS. |
| TAMARA FOLLOWS THE DRESS CODE AT THE FRONT CHECKOUTS |
| TAMARA NEEDS TO MEET HER CUSTOMERS NEEDS AT THE FRONT CHECKOUTS |

**3. STRIVE FOR EXCELLENCE** (JOB SPECIFIC PERFORMANCE): (List strengths & areas of improvement)

· Continuous Improvement          · Results-Driven      · Associate Accountability          · Store Within A Store
· Competitive Position      · Expense/Budget Responsibility      · Productivity      · Innovative      · Follow-up

| |
|---|
| TAMARA NEEDS TO BE MORE RESULT DRIVEN AT THE FRONT CHECKOUTS. |
| TAMARA NEEDS TO BE MORE ACCOUNTABLE IN HER DUTIES AT THE FRONT CHECKOUTS. |
| TAMARA NEEDS TO BE MORE PRODUCTIVE AT THE FRONT CHECKOUTS. |
| TAMARA NEEDS TO KEEP UP WITH HER S W A S DAILY. |

**4. COMMUNICATION:**      (List strengths & areas of improvement)

· Expresses ideas clearly & concisely, written or verbal · Asks questions when message is unclear
· Actively listens to, and keeps others informed

| |
|---|
| TAMARA DOES NOT COMMUNICATE WITH CSM'S AND MANAGEMENT WHEN NEEDED. |
| |
| TAMARA NEEDS TO ASK QUESTIONS IF NOT SURE. |
| |

EXHIBIT

"2B"

**5. TEAMWORK / FLEXIBILITY:**    (List strengths & areas of improvement)
· Dependable (i.e. attendance, punctuality) · Works well with others · Promotes & maintains all safety requirements

| |
|---|
| TAMARA IS NOT DEPENDABLE AT THE FRONT CHECKOUTS. |
| TAMARA WORKERS WELL WITH OTHERS AT THE FRONT CHECKOUTS. |
| TAMARA NEEDS TO PROMOTE SAFETY AT THE FRONT CHECKOUTS. |
| TAMARA NEEDS TO THINK SAFETY FIRST AND THINK SAFETY LAST. |

**6. INITIATIVE / SENSE OF URGENCY:**    (List strengths & areas of improvement)
· Meets deadlines without daily direction · CBL training complete · Plans & organizes workload to react to changes

| |
|---|
| TAMARA DOES NOT SHOW A SENSE OF URGENCY AT THE FRONT CHECKOUTS. |
| TAMARA HAS COMPLETED HER CBL'S AS OF THIS DATE. |
| TAMARA ADAPTS TO CHANGES AT THE FRONT CHECKOUTS. |
| |

## OVERALL STRENGTHS    Bullet-point comments are recommended

| |
|---|
| TAMARA IS GOOD WITH HER CUSTOMERS AT THE FRONT CHECKOUTS |
| |
| |
| |

## AREAS OF IMPROVEMENT    Bullet-point comments are recommended

| |
|---|
| TAMARA IS NOT CONCERNED ABOUT HER JOB. |
| TAMARA NEEDS TO IMPROVE ON HER SCANNING, SAFETY, S W A S, AND HAND KEYED |
| ITEMS, REMEMEBR CHANT, AND SMILE MORE AT THE CHECKOUTS |
| |

## ASSOCIATE COMMENTS / GOAL SETTING

List goals that will aid in your personal development & impact your area of responsibility. Attach additional pages if necessary.

| OBJECTIVES | MEANS OF MEASUREMENT |
|---|---|
| COMMENTS ARE MANDATORY; | |
| | |
| | |
| | |
| | |
| | |

SIGNATURES:

| | | |
|---|---|---|
| _____<br>Associate's Signature | (Print Associate's Name)<br>EVELYN E SOLIS | Date |
| _____<br>Supervisor's Signature | (Print Supervisor's Name)<br>SUZANNE HEMELT | Date |
| Manager/Director Signature | (Print Mgr/Dir Name) | Date |

Name _Barbra Flowers_ _____ Location _____ Dept. _FRONT END_ Date _____
Position _C S M_ _____ Supervisor _SheRYL ChARtieK_ Witness _____

The following was observed of this associate's behavior/performance. _Barbra was rude and argumentive with a customer. She also falsely reported to the customer that she was the only member of management in the store._
_____
_____
_____

The following Causes for Counseling have been identified. _Customer service and respect for management._

The behavior or performance expected next time. _Respect for the customer and management._

The next level of corrective action if this behavior/performance continues will be _____

What is the impact of this behavior/performance on customer service, other associates, and the profitability of the operating unit? _Poor Customer Service resulting in loss of sales_
_____

The Corrective action taken by management and the associate for this behavior or performance. _____
_____
_____
_____

**Signatures**

Associate coached _____
Supervisor _Sheryl Chartier_
Witness _____

Date of coaching _____
WMP-63 (1/94)

**Level of Counseling (check one)**

_____ 1st Written Coaching
_____ 2nd Written Coaching
__✓__ Decision Making Day
_____ Final Written Coaching

**EXHIBIT**

"2C"

WMF-20 Revised 07/00

An Exit Interview is to be conducted for all Associates leaving the employment of Wal★Mart Stores, Inc.

Associate Name _Tynuse Roberts_  Social Security No. _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_

Associate ID No. _975_  Facility/Dept./Store # _Destin 0909_  ☒ Hourly  ☐ Management

Actual Last Day Worked _6/25/00_  Date of Termination _7/6/00_  Vacation Avail (Mgmt. Only)

Updated Address and Phone Number: _7119 W Laverne St NOLA 70126_

**Detailed Statement of Termination.** This Section Needs To Be Completed By The Associate for Voluntary Termination or By The Supervisor for Involuntary Termination. (Please be specific.)

_Termination due to Gross inappropriate behavior towards customer_

## VOLUNTARY TERMINATION
(Eligible to re-apply)

03 ___ Not Available For Work (NVL)
04 ___ Failure to Return From L.O.A. (NRL)
05 ___ Refused Offer of Work (ROW)
06 ___ Job Abandonment/Three Days Unreported Absence (DUA)
10 ___ To Leave the Area (LTA)
16 ___ Child Care/Dependent Care Issues (CHI)
17 ___ Due to Health (DTH)
20 ___ Dissatisfied with Work Hours (HRS)
21 ___ Dissatisfied with Salary (PAY)
22 ___ Dissatisfied with Working Conditions (WOR)
24 ___ Dissatisfied with Benefits (BEN)
25 ___ Dissatisfied with Career Opportunities (PRM)
28 ___ Dissatisfied with Supervisor (SUP)
29 ___ Walked Off Job (WOJ)
30 ___ Stay at Home (SAH)
31 ___ Attend School (EDU)
85 ___ Retirement (RTD)

## INVOLUNTARY TERMINATION
(Eligible to re-apply)

37 ☒ Misconduct w/Coachings (CON)
47 ___ Excessive Absences and/or Tardies (EAT)
53 ___ Insubordination (INS)
55 ___ Inability to Perform Job (IPJ)
66 ___ 1st Violation of Fraternization Policy (FVP)
75 ___ Deceased (Call Profit Sharing & Life Ins.) (DEA)
92 ___ Lack of Work (Job Eliminated, Location Closed, Reduction in Force) (LOW)
97 ___ End of Temporary Assignment (ASC)

## INVOLUNTARY TERMINATION
(Mandatory No Rehire)

78 ___ Gross Misconduct – Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets)(GMI)
79 ___ Gross Misconduct – Other (GMO)
99 ___ 2nd Violation of Fraternization Policy (FRA)

Re-Hire Recommended ☐ Yes ☐No (Explain-General Comments) _____

The following Wal★Mart property must be collected at the time of Exit Interview: (Please check all that apply)
( ) Badge  ( ) Discount Card (s)  ( ) Weight Belt  ( ) Other____
( ) Smock  ( ) Company Credit Cards/Phone card  ( ) Box Cutter

**NOTE:** To be considered for re-employment, you must re-apply. Your previous work record with Wal★Mart will be reviewed. The Company assumes no obligation to contact you for possible re-employment.

ASSOCIATE _____ DATE _____  SUPERVISOR _Jeff Pam_ DATE _7-7-00_  WITNESS _Lisa Moore_ DATE _7/6/00_

Contact phone numbers for Terminating Associates:

| | | |
|---|---|---|
| COBRA | Continuation of Benefits | (800) 421-1362 |
| DISCOUNT CARD – RETIREE | Application Information | (501) 273-4664 |
| PROFIT SHARING | Automated Account Balance | (501) 273-4240 |
| | Customer Service | (501) 273-4664 |
| RESOURCES FOR LIVING | Counseling Service | (800) 825-3555 |
| STOCK OWNERSHIP | Account Information | (800) 438-6278 |
| 401K | Account Information | (888) WMT401K |
| | | (888) 968-4015 |

EXHIBIT "2D"

# COACHING FOR IMPROVEMENT FORM

Name: Charlene Bremey  SSN: 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  Location: Front End  Dept: Cashier

Position: Cashier  Date: 5-3-'98

The following was observed of this Associate's behavior and/or performance: Associate refused to work in a area she was ask to work in.

What is the impact of this behavior/performance on customer service, other Associates, and the profitability of the operating unit? Disrespect to management, poor customer service, for refusing to assist customers. Associate hurts profitability for refusing to promote sales.

The behavior or performance expected next time: Do what has been asked of associate.

The next level of corrective action if this behavior/performance continues will be: Termination

Written plan of action to be completed by the Associate: I plan to return to work on the next scheduled day and do as I am ask to do.

Associate's Comments:

| | Print Name: | Signatures: | Level of Coaching |
|---|---|---|---|
| Associate coached: | Charlene Bienemy | Charlene Bienemy | ___ Written Coaching |
| Supervisor: | Loni Banks | Loni Banks | ✓ Decision-Making Day |
| Witness: | Melissa Farr | Melissa Farr | |

Next Level of Supervision**: _____

**Only required if the Associate refuses to sign the Coaching for Improvement Form.

#9988342 - 9-97
WMP-63B

EXHIBIT

"2E"